IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| **SCOTT SPIEHLER** | § | **PLAINTIFF** |
| | § | |
| | § | |
| **v.** | § | **Civil No. 1:25cv175-HSO-BWR** |
| | § | |
| **BEAU RIVAGE RESORTS, LLC** | § | **DEFENDANT** |

**<u>MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION [24] FOR SUMMARY JUDGMENT</u>**

In this employment discrimination action brought by Plaintiff Scott Spiehler ("Plaintiff" or "Spiehler"), Defendant Beau Rivage Resorts, LLC ("Defendant" or "Beau Rivage") has filed a Motion [24] for Summary Judgment under Federal Rule of Civil Procedure 56. Because there is no genuine dispute of material fact regarding Plaintiff's claims for violations of the Family and Medical Leave Act, 29 U.S.C. § 2601 ("FMLA"), and the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. ("ADA"), Defendant's Motion [24] for Summary Judgment should be granted.

## I. <u>BACKGROUND</u>

Spiehler began working at the Beau Rivage as a part-time dealer in 2012, and in 2016, he accepted a position as a table games floor supervisor in order to receive full-time hours and benefits. Spiehler Dep. [24-1] at 10:24-11:20. His job duties included long periods of standing because the floor supervisor must be able to move between each table whenever someone needs to be paid out at a high level, or their chips need to be changed out, or they need to buy in at a certain amount, or to

provide the appropriate awards for their time spent playing. Spiehler Dep. [24-1] at 60:15-61:2; Streuber Dep. [24-2] at 9:25-10:16. During the summer of 2022, Spiehler underwent a scheduled back surgery that required him to be out of work for eight weeks. Spiehler Dep. [24-1] at 17:25-18:6. He returned to his position after the surgery, but he experienced excruciating pain whenever he had to stand. *Id.* at 21:13-22:2. After he had been back at work for eight weeks, Spiehler informed his supervisor Darren Dexter about his pain and told him that he did not think he could continue to deal with it. *Id.* at 22:15-19.

Spiehler's supervisor advised Plaintiff to fill out the required ADA paperwork, and Spiehler continued working at the Beau Rivage as the company reviewed his case. *Id.* at 23:4-9. Spiehler's physician filled out the necessary documentation and stated that Spiehler could not perform job duties that required him to stand for prolonged periods of time because he could not stand for more than ten-to-fifteen minutes without taking a break. Spiehler Dep. Ex. 3, Doc. [24-1] at 62. Additionally, Spiehler's doctor informed the Beau Rivage that he was better suited for a job that allowed him to sit for most of his shift, and requested that he be allowed to move to a position with more sedentary duties and only occasional standing. *Id.* at 62-63. As the Beau Rivage reviewed Plaintiff's ADA paperwork, Spiehler continued experiencing pain, so he reached out to the accommodations specialist who asked whether he would like to be placed on medical leave until his ADA paperwork and accommodations request could be addressed. Spiehler Dep. [24-1] at 23:11-20. On November 22, 2022, after it had reviewed the information

provided by Spiehler and his doctor, the Beau Rivage granted Spiehler an accommodation of unpaid leave for one year. *See* Spiehler Dep. Ex. 4, Doc. [24-1] at 65. Spiehler was expected to be able to return to his full work duties after this leave of absence. Spiehler Dep. [24-1] at 60:15-61:2.

After Spiehler's leave of absence expired on November 3, 2023, Spiehler Dep. Ex. 8, Doc. [24-1] at 75, he requested a permanent accommodation, with his doctor's written instruction, that he be given three-to-five minutes to sit for every ten-to-fifteen minutes he had to stand, Spiehler Dep. Ex. 7, Doc. [24-1] at 72-73. Spiehler's physician again requested that Defendant move Spiehler to a mostly sedentary position with occasional standing because he was best suited for a position that would allow him to sit for most of the shift. Spiehler Dep. Ex. 5, Doc. [24-1] at 68-69. On October 15, 2024, the Beau Rivage denied the permanent seated-break accommodation, claiming it was unreasonable under the ADA because it would require removing one of the essential functions, standing, from Spiehler's position as a table games floor supervisor. *Id.*

As an alternative accommodation, the Beau Rivage offered Spiehler the opportunity to work as an on-call dealer with specific assignments for seated games. Spiehler Dep. Ex. 9, Doc. [24-1] at 77. Spiehler declined this position, but instead chose an assisted job search alternative. *Id.* at 78. Throughout this process, the Beau Rivage offered Plaintiff positions such as an on-call table games dealer twice, a limo driver, a valet, and other alternative jobs. Spiehler Dep. [24-1] 28:16-29:17; Pelaez Decl. [24-3] at 2-3. But Plaintiff did not apply for any of the positions the

accommodations specialist provided, Spiehler Dep. [24-1] at 28:20-23, and ultimately, the Beau Rivage terminated his employment on July 9, 2025, Spiehler Dep. Ex. 10, Doc. [24-1] at 79.

On March 15, 2023, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), Spiehler Dep. Ex. 2, Doc. [24-1] at 59, and the EEOC provided Spiehler with his notice of right to sue letter on February 6, 2025, Doc. [1-1] at 6. Plaintiff filed his Complaint [1-1] in state court on April 29, 2025, alleging violations of the FMLA and ADA, and the case was properly removed to this Court under 28 U.S.C. §§ 1331, 1332, and 1441. *See* Doc [1], [1-1]. Defendant now seeks summary judgment on Plaintiff's claims, arguing that he cannot establish any claim under the FMLA or ADA. *See* Mot. [24].

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant must "identify 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party bears the initial burden of identifying the portions of the record that demonstrate the absence of a genuine dispute of material fact. *Celotex*, 477

U.S. at 323. Where the moving party meets this initial burden, the nonmovant then carries the burden to present competent evidence that a genuine dispute of material fact does exist. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

"[T]he nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial," *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994), and must point to "significant probative evidence" showing that a genuine issue of material fact exists, *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law," and an issue is "genuine" where the evidence makes it such that a reasonable jury could return a verdict for the nonmoving party. *Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th Cir. 2003). All factual controversies are resolved in favor of the nonmoving party, but only when both parties have submitted evidence of contradictory facts showing an actual controversy. *Little*, 37 F.3d at 1075. If the nonmoving party does not address or respond to a fact the moving party supports with evidence, a court may consider the fact undisputed and this may form the basis for summary judgment. *See* Fed. R. Civ. Pro. 56(e)(2); *McGilberry v. Select Specialty Hosp.*, 3:17-cv-289-TSL-LRA, 2018 WL 11374963, *1 (S.D. Miss. 2018).

B. <u>Analysis</u>

1. <u>Family and Medical Leave Act Claims</u>

The Complaint [1-1] alleges that Defendant violated the FMLA, 29 U.S.C.

§ 2601, but it does not specify whether Plaintiff is making a claim for interference or retaliation under the FMLA, which are the two types of claims a plaintiff may bring. *See* Doc. [1-1] at 2. Defendant argues in its Motion [24] that Plaintiff's FMLA claims should be dismissed regardless of how they are characterized because they are untimely and because Plaintiff conceded in his deposition that he was never denied FMLA leave. *See* Mot. [24] at 9; Spiehler Dep. [24-1] at 58:3-11. Plaintiff did not respond to this argument. *See* Resp. [27].

"Well settled precedent instructs that a party abandons a claim by failing to defend it in response to motions to dismiss and other dispositive pleadings." *McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1010 (5th Cir. 2023). Plaintiff's Response [27] does not address or respond to the arguments Defendant raised in its Motion [24] about the FMLA violations, nor does Plaintiff's Response [27] mention any FMLA violation at all. *See* Resp. [27]; Reply [28] at 2. Because Plaintiff did not defend his FMLA claim, it is considered abandoned, *see* Resp. [27]; *McClelland*, 63 F.4th at 1010; *see also* Fed. R. Civ. P. 56(e)(2)(3), and the Beau Rivage is entitled to summary judgment on any FMLA claims.

2. <u>Americans with Disabilities Act Claims</u>

a. Relevant Legal Standards

It is unclear from Complaint [1-1] what theory of alleged disability discrimination Plaintiff is asserting under the ADA, 42 U.S.C. § 12101, *et seq*. *See* Compl. [1-1]. However, Plaintiff's Response [27] advances only an argument for failure-to-accommodate, and because a party abandons claims by failing to defend

them in response to dispositive motions, *McClelland*, 63 F.4th at 1010; *see also* Fed. R. Civ. P. 56(e)(2)(3), any potential arguments for disability discrimination or retaliation are deemed abandoned, *see* Resp. [27] at 3; Mem. [25] at 11; *McClelland*, 63 F.4th at 1010. So the only remaining claim the Court need address is Plaintiff's claim for failure to accommodate his disability. *See* Resp. [27] at 3. Plaintiff argues that he can prevail on a failure-to-accommodate claim because a reasonable accommodation allowing him to fulfill his duties as a table-games floor supervisor existed. *Id.* at 3-4. Specifically, the two accommodations Plaintiff maintains would have worked were allowing him to use a stool while he was on the floor, or simply allowing him to supervise the craps table. *Id.* at 4.

To prevail on a failure-to-accommodate claim under the ADA, Plaintiff must show: "(1) [he] is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations." *Feist v. La., Dep't of Just., Off. of Att'y Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (internal quotations omitted). To be a "qualified individual" under the ADA, Plaintiff must show that: (1) he could perform the essential functions of the job; or (2) a reasonable accommodation of his disability would have allowed him to perform the essential functions of the job. *Moss v. Harris Cnty. Constable Precinct One*, 851 F.3d 413, 417 (5th Cir. 2017).

"Essential functions" are those that are "fundamental" rather than marginal to the job duties, so when an essential function is removed, a job is "fundamentally

altered." *Credeur v. Louisiana*, 860 F.3d 785, 792 (5th Cir. 2017) (citations omitted). Fact-finders must make this determination on a case-by-case basis, *id.*, and the text of the ADA indicates that the inquiry begins with consideration being given to the employer's judgment as to what functions are essential, *see id.* (quoting 42 U.S.C. § 12111(8)). Further, the regulations promulgated by the EEOC provide a non-exhaustive list of factors for guiding the essential function inquiry, which all relate to an employer's judgment rather than the employee's. *Id.* at 792 (quoting 29 C.F.R § 1630.2(n)(3)). "[N]either the statute nor regulations nor the EEOC guidance instructs the courts to credit the employee's opinion about what functions are essential," and although courts should not give blind deference to an employer's judgments, it should evaluate its words alongside its policies and practices. *Id.* at 794 (citation omitted); *see also EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014) (stating that the inquiry into whether a function is essential focuses on whether the employer actually requires the employee to perform the function claimed to be essential). "The ADA does not require an employer to relieve an employee of any essential functions of his or her job, modify those duties, reassign existing employees to perform those jobs, or hire new employees to do so." *Thompson v. Microsoft Corp.*, 2 F.4th 460, 467 (5th Cir. 2021) (citation omitted).

A reasonable accommodation includes "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or

interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111; *Thompson*, 2 F.4th at 467. First, to defeat a defendant's motion for summary judgment, the plaintiff/employee need only show that an accommodation seems reasonable on its face. *US Airways, Inc. v. Barnett*, 535 U.S. 391, 401 (2002); *see also EEOC v. Methodist Hospitals of Dallas*, 62 F.4th 938, 944 (5th Cir. 2023). If a plaintiff makes that showing, the defendant/employer must show special circumstances demonstrating undue hardship in the specific circumstances. *Methodist Hospitals*, 62 F.4th at 944. If a plaintiff cannot demonstrate that a requested accommodation is reasonable, they nonetheless remain free to show special circumstances to warrant a finding that the accommodation is reasonable on the particular facts. *Id.*

b. Analysis

The Beau Rivage argues that Spiehler is not a qualified individual under the ADA because he could not perform an essential function of the job, namely standing, and no reasonable accommodation would have permitted him to perform this essential function. *See* Mot. [24]; Mem. [25] at 12. "A function is essential if it bears more than a marginal relationship to the employee's job." *LHC Grp., Inc.*, 773 F.3d at 697 (citation and internal quotation marks omitted). Deference is given to an employer's description, and a written description is considered evidence of the essential functions of the job. *Id.* at 697-98. The inquiry into whether the function is essential focuses on whether the employer actually requires the employee to perform that function. *Id.*

Here, Spiehler worked as a table games floor supervisor, and the physical requirements description of that job state that the employee must be able to constantly stand. Spiehler Dep. Ex. 1, Doc. [24-1] at 57; *see* Streuber Dep. [24-2] at 9:25-10:6. Spiehler also acknowledged that this was an accurate description of the physical requirements of the job during his deposition. Spiehler Dep. [24-1] at 55:4-17. Additionally, this function bears more than a marginal relationship to the job; it is actually required by the Beau Rivage because a table games floor supervisor must oversee the play on each of the live games by performing various tasks during the shift, such as paying out a high level player, changing out chips, assisting someone buying in at a high level, and other tasks in a highly-regulated area. *See* Streuber Dep. [24-2] at 9:12-10:22; *LHC Grp., Inc.*, 773 F.3d at 697. Thus, Defendant has shown that there is no genuine dispute of fact that constantly standing is an essential function of the job of table games floor supervisor.

It is undisputed that Plaintiff could not stand for more than ten-to-fifteen minutes at a time without substantial pain, an admission that he and his doctor both made. *See* Spiehler Dep. Ex. 5, Doc. [24-1] at 67-68 (stating "[p]atient is unable to stand for more than 10/15 minutes w/o experiencing substantial pain," and "patient is unable to perform job duties that would require him to stand for prolonged periods of time"); *see also* Spiehler Dep. [24-1] at 55:10-17 (Spiehler stating that he knew constant standing was an accurate description of tables games supervisor, and he was unable to perform that function). Therefore, there is no genuine dispute of fact that Plaintiff could not perform the essential function of

constantly standing.

Secondly, the competent summary judgment evidence reveals that there is no genuine dispute of material fact that no reasonable accommodation existed that would have allowed Spiehler to perform this essential function and make him a qualified individual under the ADA. *See Moss*, 851 F.3d at 417. Defendant argues that it is undisputed that no reasonable accommodation existed because the ADA does not require an employer to relieve an employee of the essential functions of the job. *See* Mem. [25] at 12; *LHC Grp., Inc.*, 773 F.3d at 698. To defeat Defendant's Motion [24] for Summary Judgment, Plaintiff must show an accommodation was reasonable on its face. *See Methodist Hospitals*, 62 F.4th at 944. As previously stated, a table games floor supervisor must constantly stand, which is a physical requirement listed in the job description and is evidenced by the necessity of having to assist with the various needs at each table game. *See* Streuber Dep. [24-2] at 9:12-10:22; Spiehler Dep. Ex. 1, Doc. [24-1] at 57. Spiehler acknowledged that constantly standing was a physical requirement of the job in his deposition. Spiehler Dep. [24-1] at 55:10-17.

But Spiehler contends that allowing him to sit on a stool would have been a reasonable accommodation. *See* Resp. [27] at 5; Streuber Dep. [24-2] at 11:4-19. This accommodation would not have been reasonable on its face because constant standing to be able to move among the various table games is an essential function of the job. *See Jones v. Kerryville State Hosp.*, 142 F.3d 263, 265 (5th Cir. 1998) (stating "[a]s a matter of law, it is an unreasonable accommodation for the employer

to have to exempt the employee from performance of an essential function of the job). Spiehler's physician clarified that he must sit for three-to-five minutes for every ten-to-fifteen minutes he stands, so over an eight-hour shift, Spiehler would have to sit for roughly two-and-a-half to three hours of that time. *See* Spiehler Dep. Ex. 7, Doc. [24-1] at 72-73. Each of these breaks creates a period where Spiehler could not get up to respond to a guest, employee, surveillance, or other table operations task, which would result in a significant amount of time spent not performing the job. *See id.*; Streuber Dep. [24-2] at 11:4-19. The Beau Rivage was not required to relieve Spiehler of this essential function, *see Moss*, 851 F.3d at 417, and Spiehler has not shown any special circumstances that warrant a finding that the accommodation is reasonable on these specific facts, *see Methodist Hospitals*, 62 F.4th at 944. Instead, this would, as a practical matter, have changed the job description.

Plaintiff next maintains that another "reasonable accommodation" would have been to allow him to supervise the craps tables, where he could be seated the entire time. Resp. [27] at 4. As Plaintiff presents it, such an accommodation would be moving him to another position because a table games floor supervisor is assigned to multiple table games rather than a single one. *See* Spiehler Dep. Ex. 1, Doc. [24-1] at 54. However, "[t]he plaintiff bears the burden of proving that an available position exists that he was qualified for and could, with reasonable accommodations, perform," *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007), because under the ADA, an employer is not required to give what it does not

have, *Gross v. Carlisle Constr. Materials, L.L.C.*, No. 24-60382, 2025 WL 2427194, at *5 (5th Cir. 2025) (per curiam). Plaintiff has not pointed to any evidence in support of his argument that a craps table supervisor position existed, *see* Resp. [27], and unsubstantiated assertions are not sufficient to defeat a motion for summary judgment, *Brown*, 337 F.3d at 541. Spiehler has not carried his burden of showing that this position existed, so he has not created a genuine dispute of material fact that this would have been a reasonable accommodation. *See id.*; *Jenkins*, 487 F.3d at 315.

Finally, Spiehler did not raise this issue in the Complaint [1-1] or in his Response [27], but in his deposition, he mentioned that one table games floor supervisor, Kim Lawless, was permitted to sit on the job after she had foot surgery. Spiehler Dep. [24-1] at 44:12-45:13. The problem with this argument is that the undisputed evidence reflects that Lawless' request was temporary, for only a two-or-three-week period, while Spiehler was requesting a permanent accommodation. *Id.* at 45:25-46:6. As a practical matter, Spiehler's permanent request would have constituted a change in the job description. Spiehler Dep. Ex. 1, Doc. [24-1] at 57 (tables games floor supervisor requires the "[a]bility to perform various activities such as constant standing, walking, frequent bending, reaching, kneeling, and squatting").

The Beau Rivage has carried its burden of showing that (1) Plaintiff could not perform the essential function of constantly standing as a table games floor supervisor, and (2) that no reasonable accommodation would have allowed him to

perform the essential functions of the job, *Moss*, 851 F.3d at 417, so Plaintiff was not a qualified individual with a disability under the ADA, *Feist*, 730 F.3d at 452. For this reason, the Beau Rivage is entitled to judgment as a matter of law on Plaintiff's ADA claim.

## III. CONCLUSION

To the extent the Court has not addressed any of the parties' remaining arguments, it has considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant Beau Rivage Resorts, LLC's Motion [24] for Summary Judgment is **GRANTED**, and Plaintiff Scott Spiehler's claims are **DISMISSED WITH PREJUDICE**. The Court will enter a separate Final Judgment in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED**, this the 10th day of November, 2026.

s/ Halil Suleyman Ozerden
HALIL SULEYMAN OZERDEN
CHIEF UNITED STATES DISTRICT JUDGE